### 43260. FIDELITY & CASUALTY COMPANY OF NEW YORK et al. v. ALONSO.

WHITMAN, Judge. This case arises from a workmen's compensation hearing by a claimant seeking additional benefits based upon a change of condition. The hearing director made findings that an agreement to pay compensation was previously approved by the board which stipulated an accidental injury on March 27, 1963, arising in and out of the claimant's employment; that the disability resulting from the accident was due to displacement of the anterior medial cartilage of the knee and a spastic quadriceps muscle up to the lumbar spine which occurred while the claimant was removing a "toeplate" from a refrigerator and his knee locked; that claimant received an operation for dislocated medial meniscus in his knee; that a supplemental agreement was thereafter approved by the board which terminated compensation for temporary disability and stipulated that the claimant returned to work at the same rate of pay as prior to the accident.

Claimant sought to establish at the hearing that the March 27th accident had injured his back as well as his leg; that his leg

is now partially disabled; and that his back now causes him such pain and discomfort that he has been advised to have and would like to have an operation to cure the back problem. In this regard the hearing director found that: "[T]he claimant received adequate medical attention and recovered satisfactorily from the residuals of the accidental injury incurred on March 27, 1963, and the overwhelming testimony in the case shows as a matter of fact that the claimant, Joe Alonso, has had a recurring chronic complaint since the first episode occurring in 1959. The diagnosis of his present condition is degenerative lumbosacral disease with lumbosacral instability . . . that this is a condition which has been aggravated by the claimant's obesity and not necessarily by any job incurred accident.

"The evidence shows as a matter of fact that the claimant recovered from any aggravation of this condition, caused by the March 27, 1963 injury and has been performing his duties uneventfully with the exception of complaints that have been with him off and on since 1959. The earnings of the claimant have increased to $115 per week, whereas he was only earning $98 per week at the time of the accident. . . [T]he evidence does not show a continuing aggravation from the accident of 1963 but the condition is caused by aging and obesity of the claimant in this case and would not be compensable under the provisions of the Workmen's Compensation Act relating to a change in condition."

Based on the above findings, the deputy director's award, approved by the full board on appeal, was that the claimant failed to show a change in condition and denied the application for additional benefits.

The present appeal is taken from the judgment of the superior court reversing and remanding the award of the full board on the ground that the award was not supported by the evidence. The judgment is enumerated as error. *Held:*

1. A review of the evidence adduced at the hearing shows that the claimant has had a history of trouble with his lower back. Dr. Lindwall, a chiropractor, testified that he first treated claimant's back in June, 1959, at which time claimant complained of "severe pain in sacrolumbar area, unable to straighten up, and body was in a twist"; that his diagnosis was "suspected slipped sacrolumbar disc." The area of the back involved was the "L5" vertebra. Dr. Lindwall testified

that he treated claimant for the same condition in 1960 from August the 12th through November the 18th, and again on April 15, 1961.

Dr. Lindwall testified that he also saw and treated claimant after the subject injury on seven occasions from March 27, 1963, through April 5, 1963. His testimony was generally favorable to claimant's claim of aggravation to his back condition by the accident, but he also testified that he again treated claimant in 1965 and that he was much better at that time than in 1963. However, he also testified that in 1965 claimant's back condition seemed worse with more of a chronic type pain although the symptoms were not as severe.

The deputy director's finding that claimant's present condition is degenerative lumbosacral disease with lumbosacral instability is directly supported by the report of Dr. Perry M. White which was introduced into evidence by agreement. The report was the result of an examination of the claimant made shortly after claimant's request for the change of condition hearing.

That the condition has been aggravated by the claimant's obesity and not necessarily by any job incurred accident is supported by the reports of Dr. Donald S. Bickers and Dr. Darius Flinchum, which were introduced into evidence by agreement. Dr. Bickers' report states that claimant is obese and is advised to reduce his weight and do "Williams" exercises. Dr. Flinchum's report states that weight loss and flexion exercises might help claimant some; that he has a chronic back problem, and that the injury did not cause his condition but did cause temporary aggravation of symptoms. The evidence also shows that on January 26, 1963, *prior to the accident,* the claimant went to Dr. C. M. Warnock complaining of discomfort in the right sacroiliac region and also of gas on the stomach. Dr. Warnock testified by deposition taken at the instance of the employer and insurer by agreement of counsel and offered and admitted in evidence by counsel for employer and insurer, that he admitted claimant to a hospital on February 5, 1963 for more diagnostic procedure; that an x-ray examination was had and the content of the report of the radiologist, one Dr. King, in response to question by counsel for defendant's employer and insurer, was read into the record of the depositions without objection. This report so read into the record shows that there was a "narrowing

of the fifth lumbar interspace with reactive sclerosis of the adjacent vertebral bodies studied." Deponent also testified that "sclerosis" means hardening and could indicate arthritic change. Claimant on cross examination of Dr. Warnock on the taking of his depositions propounded to the witness the following question: "It was only after you put him in the hospital that you arrived at this principal disagnosis of his back bothering him?" To this question the witness gave an affirmative answer.

The deputy director's finding that there was no continuing aggravation from the accident and that the claimant recovered from any aggravation of the back condition is supported by the testimony of Dr. Walker Jernigan, who performed claimant's knee operation. He stated that when claimant first came to him on May 10, 1963, approximately 6 weeks after his injury, his complaints related only to his knee. Claimant himself testified that at the time he saw Dr. Jernigan he was not having trouble with his back. Dr. Jernigan saw claimant again in February of 1964, at which time, according to his testimony, claimant was complaining of back pain and complaining practically none about his knee; that he treated claimant's back and after there was no improvement, he referred him to Dr. Donald S. Bickers, a neurosurgeon.

With regard to the knee, Dr. Flinchum's report of November 5, 1965, mentioned above, attributed a twenty percent disability to claimant's leg as the result of residual soreness and aching in the knee following the torn meniscus and removal with scarring effects inside the knee. However, claimant testified by deposition on February 17, 1966, with regard to his knee as follows: "Q. And how is your knee now? A. Still once in a while the bone pop is there, but I don't know what cause that. Q. Otherwise, you're able to walk on it all right? A. As far as walk, I can walk on it all right. Q. Just makes a noise every now and then? A. It pop. Q. But it doesn't hurt or anything like that? A. Not particular . . . Q. Well, did that operation help your leg? A. With the exception once in a while that bone still pop. I don't know what it is. Q. But it doesn't lock on you? A. Oh, no, sir, no." Claimant testified on the hearing on July 13, 1966, as follows: "Q. Your job at Charles S. Martin Distributing Company is clerical work? A. Yes, sir. Q. And as such you handle papers and get up, fill out papers, work orders, et cetera? A.

Well, if you want a detail of the job I do, go up and down from my chair at least 350 times a day, I walk at least approximately 25 mile in that little space I have which is 9 x 12, because I do handle the control for all the different orders coming into my place and I have to hand it to a different credit man."

Dr. Jernigan, who performed the operation, testified as follows: "Q. In your opinion did this surgery improve his existing condition? A. Well, yes, it got rid of his cartilage and he didn't have the locking in his knee any more and he got a great deal better."

2. The issue which arose at the hearing was whether the accident which injured claimant's knee had also either injured his back or permanently aggravated a pre-existing back problem. It was also necessary to decide whether there was any permanent disability to claimant's leg as a result of the knee episode. The evidence on the issue, coming from claimant, a chiropractor, and several physicians, was contradictory.

The only question presented to this court is whether the findings and award of the deputy director, affirmed by the full board, are supported by any competent evidence. *American Mut. Liab. Ins. Co. v. Sisson,* 198 Ga. 623 (34 SE2d 295); *American Mut. Liab. Ins. Co. v. Brackin,* 68 Ga. App. 256 (1) (23 SE2d 505); *Hudgens v. Meeks & Hammond Lumber Co.,* 97 Ga. App. 95, 97 (102 SE2d 71); *Davis v. Fireman's Fund Ins. Co.,* 106 Ga. App. 519 (127 SE2d 481); *Davidson v. Fidelity & Cas. Co.,* 108 Ga. App. 51 (131 SE2d 863); *Fidelity & Cas. Co. v. Hodges,* 108 Ga. App. 474 (133 SE2d 406).

We are of the opinion that the evidence recounted above supports the findings and award of the single director adopted by the full board denying additional benefits for claimed change of condition. The superior court erred in reversing and remanding the award.

*Judgment reversed. Felton, C. J., and Eberhardt, J., concur.*

SUBMITTED JANUARY 3, 1968—DECIDED MAY 20, 1968.

*Charles L. Drew,* for appellants.
*Alford Wall, William I. Aynes,* for appellee.